IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DARNELL SMITH, | ) | CASE NO. 1:05CV1662 |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | Judge John M. Manos |
| CITY OF WICKLIFFE, *et al.*, | ) ) | |
| Defendants. | ) | MEMORANDUM OF OPINION |

On June 23, 2005, Darnell Smith, plaintiff, filed this action pursuant 42 U.S.C. §1983 against the City of Wickliffe, Ohio, its Chief of Police James Fox, and several Wickliffe police officers, defendants. On March 7, 2006, the Defendants filed a Motion For Summary Judgment (Docket No. 10). The parties have fully briefed the issues.

For the following reasons, the motion is GRANTED.

I. FACTS

The Plaintiff alleges that on October 17, 2003, he was driving along Euclid Avenue in the city of Wickliffe, Ohio. Defendant Sergeant Hengst of the Wickliffe police began tailing him and, after about twenty minutes, followed him to a McDonald's parking lot. At that time, several other police cruisers converged. The Defendant officers searched the Plaintiff's vehicle without a warrant, and then placed him under arrest.

By sworn affidavit, supported by police and court records, the Defendants assert that they were involved in the surveillance of suspected drug activity in the Cleveland area, including Wickliffe. On October 17, 2003, one of the officers received information from a confidential informant that a black male was to be delivering narcotics that day to a Wickliffe location. The informant identified the drug trafficker and his vehicle by sight. Defendant Hengst intercepted the Plaintiff's vehicle and activated his overhead lights and siren, but the Plaintiff did not stop. After proceeding for several blocks, other officers blocked the Plaintiff's car.

The Defendants state that after the stop, the Plaintiff dropped his coat and fled on foot to a nearby McDonald's parking lot. While running, the Plaintiff was observed throwing numerous small, blue paper packages to the ground. He stopped running, and the officers placed him under arrest. Eighty-nine packages were recovered, and lab results showed that they contained various amounts of heroin, cocaine, and crack cocaine. Drugs were also found in the coat and car. The Plaintiff was indicted on state drug trafficking charges, and on May 7, 2004, he pled guilty.

On June 23, 2005, the Plaintiff filed the current Complaint. In Claims 1 through 3, he asserts that the traffic stop, arrest, and search of his car and possessions violate his federal constitutional rights under the Fourth and Eighth Amendments. He claims that he is a victim of racial profiling, the searches and arrest were unreasonable, and the arresting officers subjected him to undue mental anguish and public humiliation. In Claim 4, the Plaintiff asserts that Defendants Wickliffe and Chief Fox were "negligent" in not properly training the other officers or correcting their alleged improper conduct.

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The party moving for summary judgment bears the initial burden of production under Rule 56. The burden may be satisfied by presenting affirmative evidence that negates an element of the non-movant's claim or by demonstrating "an absence of evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

If the movant meets this burden, the non-movant must "set forth the specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The substantive law identifies which specific facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To avoid summary judgment, the non-movant must "make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

"The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 256 (citing Adickes v. Kress & Co., 398 U.S. 144, 158-59 (1970)). However, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "[T]he mere existence of some alleged factual disputes between the parties will not defeat an otherwise properly supported motion" for summary judgment.

Anderson, 477 U.S. at 247-48.

    B.  Racial Profiling

42 U.S.C. § 1983 provides a remedy for the deprivation under color of state law of any right, privilege, or immunity secured by the Constitution or laws of the United States.  The elements of a claim under section 1983 are: (1) the deprivation of a federal right, and (2) the deprivation was committed by one acting under color of state law.  West v. Adkins, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988); Searcy v. City of Dayton, 38 F.3d 282, 286 (6th Cir. 1994); United of Omaha Life Insurance Co. v. Solomon, 960 F.2d 31, 33 (6th Cir. 1992). The Plaintiff's first allegation, contained as part of Claim 1, is that he was unconstitutionally subjected to racial profiling.

Racial profiling can be a violation of the Equal Protection Clause, and such allegations are governed by the same principles as allegations of selective prosecutions based on race. United States v. Barlow, 310 F.3d 1007, 1010 (7th Cir. 2002), cert. denied, 538 U.S. 1066 (2003). In a selective prosecution analysis, there is a presumption that law enforcement officials properly discharged their duties. This presumption must be rebutted by clear and convincing evidence that the conduct at issue had a discriminatory effect and was motivated by a discriminatory purpose, in that similarly situated individuals of another race were treated favorably.  United States v. Armstrong, 517 U.S. 456, 464-65 (1996); Farm Labor Organization Committee v. Ohio State Highway Patrol, 308 F.3d 523, 533-34 (6th Cir. 2002); Barlow, 310 F.3d at 1010.

A selective enforcement claim is satisfied by showing the following elements by clear and convincing evidence: (1) the plaintiff must be singled out as belonging to an identifiable group (race in this case); (2) enforcement must be initiated with a discriminatory purpose; and

(3) the enforcement must have a discriminatory effect on the group to which the plaintiff belongs.  A *prima facie* case of the first element requires a showing that similarly situated individuals outside the plaintiff's group were treated favorably.  Gardenhire v. Schubert, 205 F.3d 303, 319 (6th Cir. 2000), citing, United States v. Anderson, 923 F.2d 450, 453 (6th Cir.), cert. denied, 499 U.S. 980 (1991).

      The Plaintiff has not provided any evidence that he was subjected to racial profiling. There is no evidence that the Defendants were targeting blacks generally.  Rather, the Defendants received particularized information from a confidential informant regarding the Plaintiff's appearance and car that led the officers to focus on him specifically.  He also has not provided any evidence that similarly situated people of other races were treated favorably. The Plaintiff's allegation of racial profiling in Claim 1 is no more than an unsupported accusation, and therefore is insufficient to avoid summary judgment.

      C.  Reasonableness

      In Claims 1 through 3, the Plaintiff asserts that the Defendants subjected him to unreasonable searches and seizures, as well as undue public humiliation and mental anguish. Under the Fourth Amendment, arrests and concomitant seizures must be supported by probable cause.  Gardenhire v. Schubert, 205 F.3d 303, 313 (6th Cir. 2000).  Probable cause exists when an officer has information upon which a reasonably prudent person would believe that a crime was, or was being, committed.  Summary judgment as to probable cause is appropriate when the evidence submitted warrants only one reasonable conclusion.  Gardenhire, 205 F.3d at 315.

      Here, the information provided by the confidential informant was specific that a crime, drug trafficking, was being committed.  The Plaintiff and his vehicle matched the informant's

information. The initial stop, therefore, was justified under constitutional standards.

In addition, the Plaintiff's behavior after the stop justified further investigation and arrest. Rather than stop immediately when commanded by Sergeant Hengst's lights and siren, the Plaintiff drove onward for several blocks. Once stopped, he then fled on foot while visibly discarding the blue packages. It was reasonable for the officers to investigate the items discarded by the Plaintiff, and then to arrest him based upon the drugs found. The Plaintiff also does not identify any facts about the incident that support an argument or inference that the officers subjected him to undue public humiliation or mental anguish. Accordingly, summary judgment is warranted on Claims 1 through 3 because they lack merit as a matter of law.

D. Municipal and Supervisor Liability

The Plaintiff asserts Claim 4 against the City of Wickliffe and Chief of Police James Fox in his official capacity. The Plaintiff alleges that these Defendants did not adequately train and supervise the other officers.

With respect to the city, under 42 U.S.C. § 1983, a municipality cannot be liable for the actions of its employees under the principle of *respondeat superior*. Rather, there must be a municipal policy or custom that itself causes the deprivation of a federal right, thereby rendering the governmental entity directly responsible for the injury. Monell v. Department of Social Services, 436 U.S. 658, 691-95 (1978). To prevail, the Plaintiff must identify a municipal policy or custom and show that the particular injury was caused by the execution of that policy or custom. Searcy v. City of Dayton, 38 F.3d 282, 287 (6th Cir. 1994) The municipality must have acted with "deliberate indifference" as to known or obvious consequences of its policy. Board of County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 407 (1997), citing,

Canton v. Harris, 489 U.S. 378, 388 (1989).

Similarly, a supervisory employee cannot be liable under the principle of *respondeat superior* for an alleged failure to train or control another employee. Rather, the supervisor must have either directly participated in or encouraged the unconstitutional conduct, or at least implicitly authorized, approved, or knowingly acquiesced to such conduct. Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999), cert. denied, 530 U.S. 1264 (2000); see also Lillard v. Shelby County Board of Education, 76 F.3d 716, 727 (6th Cir. 1996); Taylor v. Michigan Department of Corrections, 69 F.3d 76, 80-81 (6th Cir. 1995).

Here, the only city policy identified by the Plaintiff is its policy *against* racial profiling. The officers, therefore, did not act in contravention of any unconstitutional policy. Likewise, there is no evidence to support a claim that Chief Fox participated in, encouraged, or acquiesced to any improper conduct. In addition, given the Court's decision on the other claims, there is no basis for finding a justiciable issue on Claim 4. Because the arresting officers did not act improperly, no corrective discipline was warranted, and there is no basis for concluding that their training was inadequate. Accordingly, summary judgment is appropriate on Claim 4 as well.

### III. CONCLUSION

For the foregoing reasons, the Defendants' Motion For Summary Judgment (Docket No. 10) is GRANTED, and this action is hereby dismissed with prejudice, each party to bear its own costs.

IT IS SO ORDERED.

Issued: May 23, 2006                    s/ John M. Manos
                                        UNITED STATES DISTRICT JUDGE